The next matter, number 23-1238, Joseph A. Jakutis versus the Town of Dracut et al. At this time, would counsel for the appellant please introduce himself on the record to begin? Good morning, Your Honors. May it please the Court. My name is Lawrence Sweeney for the plaintiff, Joseph Jakutis. This case is sort of not the run-of-the-mill case regarding free speech and other matters, and I think one of the main points here is obviously the characterization of the speech, whether it's citizen speech or not. And I think in this instance the Garcetti case is distinguishable and its progeny is also distinguishable because in those cases, when we were talking about the employee's speech, the employee had the actual subject of the speech. The subject matter was something that was part of their duty, what they were doing. It was in their actual assignment or something that they were ordered to do. In this particular instance, granted that it sort of sounds like it falls within his normal job duties, I think we have to fine-tune what that means, normal job duties. And in this particular instance, the information about the corruption in the Dracut Police Department came to him from an informant, not on a matter that they were doing. They weren't conducting something that had to do with the Dracut Police Department. It was a totally separate thing that they were doing. It was something they were doing with the Cross Borders Initiative as a task force officer for the federal government. And after that was done is when that informant, on a side note, that had nothing to do with that operation, told him that he knew about some corruption going on in the police department. And it was at that point that it was revealed. Just so I understand, is your contention that the reason it doesn't fall within Garcetti is because the content of what the CS told your client was unrelated to the reason for the investigation? Or is your contention that the CS gave your client the information at a moment in which your client was not working for anybody? Not that he wasn't working for anybody. My client was working for the federal government. I know he was working. He was conversing with the CS. He doesn't do that as an off-duty matter, I take it. Well, it in a sense was off-duty. Well, that's what I'm asking. Is the argument you're making that the reason it doesn't fall within Garcetti is because of the content of what the CS was telling your client? Or is it because it's as if they ran into each other while they were each on vacation in Florida and struck up a conversation about this topic? Yes, I believe that's the statement. Yes. And not the first. Correct. And it's no different than if he received that information from somebody that he was sitting in that's not a CI that he's sitting in Dunkin' Donuts with and tells him. Okay, so just to follow that up so I make sure I understand what the argument is, if the CS was being interviewed by your client as part of the federal task force and they are talking about the investigation directly germane to the federal task force and in the course of it the CS said, hey, I also want to tell you about this corruption going on in the police department and I'm going to spend a couple minutes doing that and then we'll get back to talking about what we're talking about in the investigation, would that fall within Garcetti? Not necessarily because it had nothing to do. Well, that's what I guess I'm asking. Is the relevant thing the content of what the CS is talking about or is the relevant thing the circumstances in which your client's talking to the CS? Both. It's both. The content of what he was telling him. So at least here you're saying both things are true and because both things are true it falls outside Garcetti? Yes. So what's the indication that he was receiving the information from the CS in a context that's akin to them bumping into each other in Dunkin' Donuts rather than in a circumstance in which the CS is talking to your client because your client is conducting an investigation for the federal task force? Because the CS was only engaged for purposes of particular investigations. The CS is involved with particular circumstances and investigations themselves. This had nothing to do with what he was doing for either. You're deriving that from the content of what the CS said? That's from the content and the context. What's the context part of it that indicates that this conversation was occurring outside your client's actions in conducting an investigation for the task force? Because they had finished. What shows that in the record? It's in his testimony and I believe it's in the deposition testimony that he had concluded. It was after they finished the debriefing of those two. There were two police officers. There were two CSs. They did their debriefing. After that debriefing was over, Mr. Jakoudis was driving him to his car so he could go home. It was then that he said, hey, I've got to tell you something. If you look in the record, part of the reason he told him this was because he believed that he was ratted out by one of the Dracut cops on a separate matter dealing with stealing of credit cards. He was kind of, you know, you do that to me, I'm going to do it to you too. Whether it would be for the jury to decide whether he was making it up or not, but he came forward and went into, not under oath, but he went to the FBI and gave that whole story knowing that giving false information is a crime. So the reason he did it has nothing to do. And we're on summary judgment here or not? Yes. And in making the summary judgment ruling below, the district court described the context how in your view? The district court basically said that because Joe is a police officer and he got information about illegal drug use, that that is basically his duty to then turn it. Did it describe one way or the other in its view when it made its ruling, including did the district court rule on qualified immunity? I can't remember. I believe they did not rule on qualified immunity. But in any event. Counsel, can I ask you a question? What if the report from the CS was that a murder had taken place, having nothing to do with any sort of drug investigation or corruption involving drugs was a murder? By a police officer, you mean? Just that a murder had taken place. Do you agree that your client would have had the obligation to report that information? Possibly. Would he be acting as a citizen when he does that and not as a police officer? He may be, depending again on how that information came to him. And I mean, I think it is citizen speech in a sense. And it can be citizen speech and employee speech at the same time, but protected by citizen speech. Because if that officer, I mean, let's put it this way. Maybe he doesn't have to do that. If he's a police officer and he's in Dunkin' Donuts and somebody says, I saw somebody commit a murder or something like that, he should do it. Why? I'm sorry? Why? Why should he? It's the moral and ethical thing to do.  to do anything with that information? Not if he's not on that job when he received that information. He was not on the job with Dracut when he received this information. Dracut's cha-tran, his boss, already said that when he's with the task force... Could he be disciplined for not having given it? I'm sorry? Could Dracut discipline him for not having given the information? I don't believe they could have. Do we have anything in the record that would support that? I'd have to say not obvious conclusion. No, there's a general thing in the record that says police officers have to report all crimes and things like that. But to hold that as employee speech, when you're talking about the fellow police officer conducting something serious of this nature criminally, and you're talking about one other police officer coming forward to reveal that, you're going to stifle... I mean, this is part of the problem with the blue coat of silence. Nobody can come forward and talk about these things because everybody's afraid. Well, geez, you know... I'd like to ask you another question, counsel. If Dracut has an officer who's assigned to the cross-border task force and therefore under the supervision of the DEA, and that police officer commits a crime in the course of their duties under the DEA, can Dracut discipline that officer for it? Absolutely. They can discipline him if he's out drunk driving a car and stuff like that too. Sure, that's not a problem. But the issue is not what he's done. It's what somebody else has done. And so in the whole scheme of things, I think this type of speech holds a little bit different status and deserves a little more protection and maybe a little fine-tuning and looking at the Garcetti case a little more closely and trying to distinguish the other cases that found that it was non-citizen speech because of the nature of the fact that the officers would be disciplined if they didn't follow the directive. There was no directive there. I have a puzzle which maybe gets at the point you're making about the animating concern that you raised in the brief about code of silence and the like. If I understand it, your theory is that he was punished for telling the task force. Yes. And if I follow, the argument would be something like even if the speech vis-a-vis the task force was speech that falls within Garcetti, since the speech that he was being punished for was speech that was given not to Drakett, Drakett is effectively punishing him for speech that vis-a-vis Drakett is not Garcetti's speech. That is an alternative. I don't think that's an alternative way to look at it. Is that not the way you presented it? No, it's that it was not citizen speech at all. So you didn't make that argument to the district court, the argument I just described? Yes, there was arguments that it didn't go up the chain of command. Even if you're talking about the chain of command of the DEA, he didn't do that chain of command. That's where in my brief, if you look at the little analogy I gave with the officer that was working for Town A and moonlighting for Town B, and he finds out information while working for Town B that there's corruption in Town A, and Town B chief says, well, you better tell them over there, and he tells them and then they discipline him for that. That's not part of the job that he was doing at the other town, at Town A. So was that theory presented to the district court? I believe it was. If so, I couldn't find a case. I understand the idea because it is vis-à-vis the person you're claiming engaged in the First Amendment violation. Vis-à-vis that actor, they're punishing him for speech that, relative to them, was not official speech to them. That's correct. So it should be just not within Garcetti. It should be treated just like anybody who's punished for speech that they give, even if the speech happened to be offered in official capacity. That's correct. For purposes of qualified immunity, how clear is it, in this case and on this record, that that's what was going on? I think what's clear is that the retaliation, you have to look at what happened and why they did it, and I think, in their mind, they're saying it was work that's related to Drake. And that's why they're saying it's citizen speech, whether it's because he was working for Drake. They're basically saying he's a cop, he's a cop wherever he's a cop, and so that's work-related. So the fact that they want to say in one breath that he's an employee doing that, and then in the other breath they say that he's not an employee because he was working for the FBI. Any further questions? Thank you. Thank you, Your Honor. Thank you, counsel. At this time, counsel for the United States would please introduce himself on the record to begin. Good morning, Your Honors. Michael Fitzgerald for the appellees Poirier, O'Hanlon, and the United States. At the outset, I just want to make clear that the characterization of Mr. Jacuzzi's speech and the Garcetti issues, that isn't relevant to the appeal of the dismissal of the claims against Poirier, O'Hanlon, and the United States. The district court dismissed those claims based on threshold issues that were antecedent to the merits question of whether or not protected speech occurred and whether or not he was allegedly retaliated against because of it. Briefly turning to the 1983 claim, the district court correctly dismissed the 1983 claim against Poirier because the complaint did not adequately allege that Poirier was acting under color of state law when he allegedly retaliated against Mr. Jacuzzi. The plaintiff certainly argued that Poirier was not acting under color of federal law, but that's, of course, not the same thing as acting under color of state law. The complaint did not contain allegations from which the district court could infer that Jacuzzi's alleged or, excuse me, Poirier's alleged retaliation against Jacuzzi was dependent on or only made possible by virtue of his state law authority. In fact, the complaint made clear that the only context in which Poirier and Jacuzzi would have interacted was as part of the federal DEA task force. That was made possible by virtue of the federal designation statute, 21 U.S.C. 878, which confers federal law enforcement powers on the task force officers. Apart from the federal task force, Poirier worked for the Massachusetts. Can I just ask you a thing? Sure. And I take what you're saying, but it is just an odd circumstance because a necessary predicate for that statute to kick in is that Poirier be a law enforcement officer, correct? For 1983 to kick in? No, for the designation. Oh, that's correct. And he only has that status because of state law, correct? Yes, that's correct. So for purposes of 1983, how do we know that although federal law was required in order for him to be there, so was state law? So how do we know he's not acting under color of state law? I'd say his capacity as a police officer, state or local, is what allows him to be designated. But the question in terms of 1983, you're looking at the source of authority for the allegedly offended conduct. And what I'm saying is, isn't it necessarily both state and federal law rather than only federal law? No, Your Honor. The source of authority for exercising powers as part of the task force would just be Section 878. Except the statute you point to only enables him to be on the task force if he's already a police officer and he only already is because of state law. I mean, I think, Your Honor, there would be multiple predicate conditions to him being designated that don't bear on the exercise of authority. I mean, he'd also have to be, you know, an adult. If being an adult doesn't get you into 1983, acting under color of state law does. And one of the things he was doing was acting under color of state law in addition to acting under federal law. I disagree, Your Honor. Is there some case that tells me that we ignore the fact that part of what gave him the authority was state law for purposes of determining whether Section 1983 applies? Yes, Your Honor. I think the most on-point case would be the recent Eighth Circuit one, Yassine v. Weicker. It's the same sort of situation. But I actually think this case is probably even more clear-cut because typically the situation arises when the defendant is exercising a law enforcement authority such that it either has to be this binary thing of he's acting under federal or state capacity, say, effectuating an arrest or executing a search warrant. You can only do that in the color of subgovernmental authority. Here, the issue is further far removed because the allegedly offending conduct is almost more of an employment retaliation type of conduct. You don't have to be acting under color of any governmental authority for that to occur. So I first point the court to Yassine v. Weicker because I think it has the best discussion of how the designation statute works and what the interplay is with Section 1983. But I actually think this case is even more clear-cut because it's not as though Poirier was exercising law enforcement authority in the same way as he would be if he was effectuating an arrest or a search warrant. Briefly, Your Honor, on the Bivens claim, the district court correctly dismissed the Bivens claim. All parties in the district court agreed that it could have presented a new context, and the district court correctly presaged Boole in declining to apply or extend the Bivens remedy to that new context. And then finally, on the state law tort claims, those claims were correctly dismissed as against Poirier because the Westphal Act makes the United States the sole proper defendant for tort claims like that. Upon certification that the defendant was acting as individual capacity, that certification was filed here, and Jakutis expressly waived and withdrew his objection to that certification. Thank you, Your Honor. Thank you. Thank you, counsel, at this time. If counsel for the appellee, Town of Dracut, could please introduce himself on the record to begin. May it please the court. Good morning. I'm Tom Donohue. I represent the Town of Dracut. I'll also be arguing for the individual Dracut defendants, Dimitri Melanakis and David Chartrand, whose counsel Adam Sims and Joseph Podolsky are also with me. But rather than divide our time, I'll take the argument unless either of your honors has direct questions for them. The one thing I would like to correct from our brief is that just an error I noticed while preparing, is the plaintiff has retired. I think in our brief we have that he's still on administrative leave. That was true during the underlying court action, but he has since retired. So I just wanted to correct that for the record. The plaintiff here has no First Amendment protection. He was not speaking as a citizen. He was speaking pursuant to his job duties as a police officer. Broadly speaking, as a police officer, it is his duty, as he admits, to report crimes. Can I just give you a hypothetical that occurs to me, and then you tell me how this fits with that? Suppose a schoolteacher is teaching critical race theory in the high school history class, and that gets known. And then the schoolteacher decides to step down and then seek a job as a police officer. And the department says, well, no, because you taught critical race theory and you were a teacher. Would she have a First Amendment claim? I hadn't considered that. I'm just thinking in the law enforcement context. The analogy, the reason I ask it is because that's a case in which the speech that you're being punished for was clearly official speech. So under Garcetti, if they tried to bring the claim against the school itself for doing that, she might have a problem under Garcetti. And yet the reason you paused, the reason I paused, because it seems problematic if now I'm just punishing you for speaking, and you weren't doing official action towards me, I'm just punishing you for speech that you gave in an official capacity to someone else. Is that permissible? And I guess by analogy, the argument here is, well, he made report to the task force, but now Dracut's punishing him for having made the report to the task force. But he didn't owe any duty in giving that to Dracut is the argument. So what's the response to that? So the response to that is it's a totally different situation if somebody's acting as a teacher and then becoming a law enforcement officer later on. The plaintiff is a Dracut police officer loaned to the DEA, acting as a police officer. He's not on a day-to-day basis reporting to Dracut, but he is still a Dracut police officer working with the Dracut police, being paid by the Dracut police. The plaintiff himself and other officers admit it is his job. It is a mandate. He must report allegations of police corruption. But wasn't he being the claim, isn't the claim that he was being retaliated for having given that information to the task force? Yes, but John, the analysis is, and I see where you're going with the teacher analogy there, is it's still within the scope of his job, broadly as a police officer, specific to the DEA. I am not aware of any case law that would suggest that a police officer here, still being paid by the same town, is making that speech that is clearly within the heart of his duties as a police officer and a drug investigator, that that would somehow be citizen speech. I mean, this is clearly within what he's mandated to do. This goes to the heart of what he does. And all of that... We have to write an opinion, and we try not to write opinions we regret writing. The teacher, in my hypothetical, is doing what is the heart of what she was supposed to do as a teacher, right? It was clearly official speech. She was just instructing a class. So isn't that pretty much the same as what you just described? I'm trying to figure out how they're different. Well, I think, I suppose it would depend on whether the teacher, if that's part of what she's being taught to do. And if she was a math teacher, maybe for some reason... But no, she's an African-American studies teacher. In that case, no, I think that's a different situation. I'm trying to figure out why. Is it because the idea is that even though the speech was made to the task force, at the time it was made to the task force, it was also speech that was made to the police force. So you're saying that the plaintiff had a duty to also give to Dracut? Is that the idea? Well, not that he had a duty to give to Dracut. He did not have a duty to? Well, I don't think he had a duty necessarily to report it to Dracut right away. He had a duty to report it to his task force to then deal with the situation. And Dracut was brought in. But I suppose he did have a duty to bring it to Dracut, but he did. So we're not claiming that. I suppose under your hypothetical yes, then it would be okay. That is official speech by the teacher. So it would be okay. She would not have First Amendment protection for that speech. So anybody can punish her for that speech? Even people to whom she had no duty in giving that speech? I think under the First Amendment analysis... Is there a case that goes that broadly? I don't see any of the cases talking about that. I don't either, Your Honor. But you're asking us to rule that broadly and that's the only way you can win? Well, it's just not protected speech. It seems like such a different situation, but she is not speaking as a citizen. She is speaking pursuant to her official duties if she's mandated to give those lessons. So there's no citizen analog to that. She's doing her job. You don't have any narrower argument on behalf of your client? Well, that was the argument I was attempting to make earlier. This is such a different situation because he is working from the Dracut Police Department, being paid in a task force, still working with Dracut in that area. That seems like a distinction. Why does it matter here, in your view, to the First Amendment analysis? Well, I think it matters. I don't know that it necessarily does, but I hadn't thought of the case as broadly as your analogy with the teacher. But this seems much different because he's continuing to work with Dracut. It's speech that he must give as a Dracut police officer. He's mandated to do so as a Dracut officer and as a DEA assigned officer. So I hadn't considered it that broadly, but here the court, I think, need not draw such a broad distinction, but he's making the speech pursuant to law enforcement duties. He's still working within law enforcement. So that's why I think it's a different analysis. And clearly, his speech is, there's no citizen analog, because he's doing this through his contacts with the CI that he had worked with in Dracut and with the task force. Certainly citizens don't work with CIs. The plaintiff himself then got involved in the investigations. Certainly that's not something that citizens would do. He went up the chain of command. So this case is very much like the Gilbert versus Chickabee case in which a police officer there was mandated, and it was part of his job duties, is to report wrongdoing by police officers. There he went up the chain of command, and the court held that there was no First Amendment protection there because he was not speaking as a citizen, but rather as pursuant to his official duties. This case is very unlike the Bruce versus the Worcester Transit Authority case, which made it clear that employee was speaking as a public citizen. He had no special inside knowledge. He wasn't tasked with giving that speech. No one would think he was authorized to give that speech. He was a bus driver, so it wasn't his job then to get on TV. I guess what I'm just still puzzled by is in applying Garcetti, are we interested in a relational sense, so that the question is not is it citizen speech or government speech in the abstract, but is it speech as part of your official duties vis-a-vis the actor who is claimed to be punishing you for making it. And from that perspective, I'm trying to figure out did the plaintiff here make the speech in any way that could be understood as in response to an official duty it had to Drake. I mean, one possibility is yes, because Drake had tasked him with being in the task force, so he's supposed to participate in the task force. So that's all sort of part of the official duties Drake would have expected of him to be doing even vis-a-vis Drake. Well, that's correct, Your Honor. I think in a broader sense, the analysis is the person making their speech pursuant to their official duties. To whom, I guess is what I'm asking. Right. Well, is it official duty to anybody we don't care or official duty to the actor claimed to be violating the First Amendment? I think the law is to anyone we don't care, but here the court can be much narrower and say, while still acting as a Drake police officer, that speech is related to his law enforcement duties. So I would suggest to the court that the decision is much narrower, because just the factual situation we have here is he is a signed incent for and paid from the Drake Police Department to the DEA. And the plaintiff admits he has a mandate, he must report police corruption, and he must report it to the DEA and to Drake, and he does so. So it's not an issue that he didn't report it to Drake, it got to Drake, he just went through the DEA channel. May I ask you just one question? I'm interested in your perspective on how to think about this hypothetical police officer from a local police department is assigned to a DEA task force, similar to what we have here, and notices either while on the job or new from prior knowledge that the evidence room at the local police department is handled abysmally. And so says to the task force people who want to log evidence into that local police department evidence room, and he came from that local police department, says I recommend against doing that, it's handled abysmally. Can the local police department take personnel action against him and be protected under the First Amendment? I believe under that hypothetical they can, because there's no citizen analog to that speech. All of that information would be from his job as a police officer. He's making that within his law enforcement duties. So that's not citizen speech, that would be mandated by his job. So because of that there would be no First Amendment protection.